Stanard, J.
The appellee sought by his bill, and obtained from the court below, an injunction to a judgment in an action of ejectment prosecuted against Him by the appellant, and a decree for a conveyance from the appellant of the lot of land in controversy. His claim to the relief he sought was twofold : first, as assignee of a title bond of Robinson to Argy Allen, under an assignment of that bond to him by Jenny Allen the devisee of Argy; secondly, as assignee of an obligation of Robinson to the appellant for the conveyance of the lot in question, under an assignment of that obligation by the appellant. The suit, having regard to either ground of claim, is essentially one for the specific performance of a contract, and the principles which guide the discretion of courts of equity in giving or withholding relief in such cases, should govern in ascertaining the relief that ought to be administered in this. One of those principles, and a fundamental one, is, “ that the contract must be certain, fair, and just in all its parts; and if any of these ingredients be wanting in the case, the court will not decree a specific performance.” Buxton v. Lister, 3 Atk. 385. Ellard v. Ld. Llandaff, 1 Ball & Beatty 241. Under the influence of this rule, the aid of the court to enforce the performance of contracts has been refused w'here material facts have been concealed, or where the defendant resisting the execution of the contract entered into it under a mistake or material misapprehension of his rights, or of facts affecting those rights, especially if the plaintiff had had any agency in causing that mistake or misapprehension. Stanley v. Robinson, 1 Russell & Mylne 527. 4 Cond. Eng. Ch. Rep. 544.
*377 The appellee had no title to relief under the assignment he procured from the devisee of Argy Allen, of the title bond given by Robinson to Argy Allen. This is perfectly clear, and is conceded by his counsel. But still it is proper to take a brief view of that claim, because of the light it reflects on the situation of the parties to the other assignment, and the consequent influence it may have on the title to relief under that assignment.
In support of the claim under the assignment of Jenny Allen, the appellee, by his bill, suggests that about 150 dollars of the purchase money had been paid, and that he had given a valuable consideration for the assignment. There is, however, no proof, or attempt at proof, of the payment of one dollar of the purchase money. The evidence in the record distinctly shews that the appellee was agent of Robinson, and in pursuance of instructions from Robinson, had, in the fall of the year 1831, made an agreement with Jenny Allen for the surrender of the title bond, in consideration of a life estate to her in the lot. Though the evidence does not distinctly ascertain that this contract was carried into execution, yet it does not shew that there had been any rescission of it. In August 1832, Robinson, in his contract with the appellant, recognizes a contract with Jenny Allen, and treats it as one executed by him : and when the appellee obtained the assignment from Jenny Allen, he confessedly had full notice of the contract of Robinson with the appellant, and Jenny Allen agreed to receive, for the surrender or assignment of the title bond, the same consideration that Robinson had recognized as due and as having been secured to her. The stipulation of the appellee that she should have the consideration which had been provided for her in the contract of Robinson and the appellant, is all the consideration of the assignment to the appellee, and therefore, in effect, none passed from him. The entire con *378 sideration was already provided for her, and came from Robinson. The appellee, too, was the agent of Robinson, who had been charged with the duty of bargaining for the surrender of Jenny Allen's interest. This being so, the assignment by her of the title bond enured to the benefit of Robinson. If Robinson had not sold to the appellant, I think it clear that he could have successfully resisted the claim of the appellee under the assignment of Jenny Allen. A fortiori, that resistance could be made by a purchaser from Robinson.
The claim of the appellee under the assignment from the appellant is resisted by him, and he insists he ought to be absolved from his contract, on the ground (among others) that that assignment was procured from him under a misapprehension as to the right alleged by the appellee to exist under the title bond to Argy Allen, and the validity of that claim—a misapprehension produced, as the appellant alleges, by the concealment or misrepresentation of the appellee. The evidence ascertains, beyond any reasonable doubt, that the appellee opposed to the claim of the appellánt under his contract, the ostensible claim under the title bond of Allen, (of the assignment of which claim to the appellee, the appellant seems then to have had no notice;) that he insisted on the. validity of that claim, and endeavoured to impress on the mind of the appellant the conviction that it was valid, that Robinson could not make him a title, and that he was in danger of losing his money. The evidence as clearly ascertains that the appellant would not have transferred or given up to the appellee his contract with Robinson, but for the apprehension excited respecting the validity of the claim under the title bond to Allen; in producing which the appellee at least participated. The summary notice of the claim under the assignment of that title bond to the appellee has already shewn that that assignment, instead of reviving and aiding a hostile claim against Robinson or *379 bis vendee, had, in point of law and equity, extinguished it, except to the extent that it was recognized and admitted by the contract between the appellant and Robinson ; and no one can doubt that had this been known to the appellant when he made the assignment to the appellee, that contract would not have been made.
"Without adverting to other objections urged by the appellant to the relief sought by the appellee, and canvassing the law or evidence on which they rest, what has been said presents a case in which a decree for specific performance ought not to be rendered against the appellant. He ought, however, to return the money he has received from the appellee, because his justified resistance to the execution-of his contract leaves the appellee without the consideration for which it was paid. It occurred to me at one time, that the court might and ought to make provision, in this case, to secure the repayment of that money to the appellee. But further reflection has satisfied me that it is neither necessary nor proper: not necessary, because the appellee has a plain and adequate remedy at law to recover it: not proper, because he had not come into equity for that redress; and that being the only claim which, in the view that has been taken of the case, the appellee has on the appellant, if he had asserted that claim only, there would have been no occasion to resort to a court of equity for redress, nor was that the proper forum in which to seek it.
I am of opinion that the decree of the court below is erroneous, and ought to be reversed, and instead thereof a decree rendered dismissing the appellee’s bill, and that the appellant recover his costs in this court and the court below.
Cabéll, J.
The appellee’s bill, in one of its aspects, is a bill for specific execution. In all such cases, *380 the application is addressed to the discretion of the r L court; and it is a settled principle, that the plaintiff, to entitle himself to relief, must come in with clean hands and be free from all imputation. He must not have been guilty of any material misrepresentation or suppression of the truth in relation to the transaction.
Robinson sold the lot in controversy to Argy Allen in the year 1811, and gave him a bond to make a title. Argy Allen made his will devising the lot to his widow Jenny Allen, and died in 1830, having never received a deed, or paid any part of the purchase money. After Allen’s death, Robinson employed Jackson as his agent to make an arrangement with the widow and devisee of Alen, by which the sale was to be cancelled, and she was to release her interest in the lot to Robinson, on his executing to her a lease of the lot for life, reserving only a nominal rent. This arrangement was actually entered into and agreed upon, between Jenny Allen on the one part, and Jackson, as the agent of Robinson, on the other. It seems, however, not to have been carried into formal execution; the failure to do which is not accounted for in the evidence. But there is no reason • to believe that it was ever revoked, annulled or objected to by either party, except possibly that the life estate of Jenny Allen may have been subsequently restricted to a part only of the lot. It is clear that she never after-wards claimed any title to the inheritance, and that Robinson, considering himself as owner, sold the lot to Gibbons, received the purchase money, and gave a bond to execute a deed, “ with the reservation of the life estate granted by the said Robinson and wife to the widow of Argy Allen.” After this, Jackson, with full knowledge of Gibbons’s purchase and of his having paid the purchase money, procured from Jenny Allen an assignment to himself of the title bond which Robinson had originally executed to Argy Allen. For this assignment he gave no other consideration than his own covenant *381 that he would secure to her, during her life, the enjoyment of a part of the lot.
It is well established that an agent cannot make himself an adverse party to his principal. What then was the effect of this assignment to Jackson ? Shall he be permitted to avail himself of it, so as to defeat, for his own benefit, an arrangement which he, as agent, had previously made for another ? Certainly not. The law regards the assignment as enuring to the benefit of his principal, Robinson, and those claiming under him, and gives it the same effect as if it had been made directly to him or them. Jackson's claim under this bond is therefore worthless.
His claim under the assignment of the bond to Gribbons is equally unsustainable in a court of equity. It is manifest that this assignment was made by Gibbons in ignorance or misapprehension of his rights; that this ignorance or misapprehension was produced, in some measure at least, by the declarations and conduct of Jackson during the negotiation; and that he would not have made the assignment, had he not been thus misled. He represented the prior bond to Argy Allen as being still valid, and as taking from Robinson all right to convey the land to Gibbons, when he well knew that it could not subserve that purpose; and he failed to communicate the material fact of the arrangement, made by his own agency, by which that bond was to be cancelled.
I am of opinion to reverse the decree, to dissolve the injunction, and to dismiss the bill; but without prejudice to any suit which Jackson may be advised to bring for the recovery of the money which he paid to Gibbons.